UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Malik Erkins, | ) |
| Plaintiff, | ) No. 15 C 06235 |
| v. | ) Judge Edmond E. Chang |
| Dorothy Brown, Cook County, Lynda Wingerter, Jeanne Campanella, Britni Huddleston, Beverly Hemrich, and Kaycee Gosnell, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Malik Erkins brought this suit against the Clerk of the Circuit Court of Cook County, the County itself, and various Illinois Department of Corrections (IDOC) employees, alleging that he was unlawfully incarcerated in state prison beyond the term of his sentence. The gist of Erkins's Amended Complaint is that Dorothy Brown, in her official capacity as Clerk of the Circuit Court, failed to notify the IDOC that Erkins had 337 days of good-time credit for time served towards his prison sentence. R. 24, Am. Compl. ¶ 32.[1] In the alternative, Erkins alleges that IDOC employees in fact received notice from Brown's office about Erkins's 337 days of good-time credit, yet repeatedly refused to account for this credit when calculating Erkins's release date. Id. ¶ 33. Whoever was at fault, Erkins asserts that he spent about 143 days too many in prison. Id. ¶¶ 32-33.

---

[1]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

Erkins now brings an Eighth Amendment claim under 42 U.S.C. § 1983 against the IDOC Defendants, and asserts supplemental state-law claims against Brown for negligence, along with the County as a target for respondeat superior liability for Brown.[2] All of the Defendants now move to dismiss Erkins's claims for lack of subject matter jurisdiction and, alternatively, for failure to adequately state a claim. R. 32, Brown Br.; R. 42, IDOC Defs.' Br. For the reasons discussed below, the Court denies the IDOC Defendants' motion to dismiss, but grants Brown's[3] motion to dismiss the claims against the Clerk's Office for lack of subject matter jurisdiction.

**I. Background**

For purposes of this motion, the Court must accept as true the allegations in Erkins's First Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In June 2014, the Cook County Circuit Court sentenced Erkins to serve two concurrent three-year imprisonment terms for two burglary convictions. Am. Compl. ¶¶ 11-12; R. 42-1, Exh. A. By the time Erkins was sentenced, he had already served—and was entitled to receive credit for—337 days towards *each* of his two sentences. Am. Compl. ¶ 13. The sentencing order for Erkins's conviction in one of the burglary cases, Case No. 13 CR 1799402, acknowledged the 337 days of good-time credit, but the order for the conviction in the other burglary case, Case No. 13 CR 1798402, did not. Exh. A.

---

[2]The Court has subject matter jurisdiction over the federal claim under 28 U.S.C. § 1331, and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.
[3]For convenience's sake, the Court refers to Brown and the County as "Brown" throughout the opinion, unless context dictates otherwise.

Illinois state law requires circuit court Clerks to "transmit to the department, agency or institution, if any, to which the defendant is committed … the number of days, if any, which the defendant has been in custody and for which he is entitled to credit against the sentence … ." 730 ILCS 5/5-4-1(e). Erkins alleges that at the time he was sentenced, Dorothy Brown, as Clerk of the Circuit Court, failed to tell the IDOC that Erkins had already served 337 days towards *both* of his three-year sentences, not just one of them. Am. Compl. ¶ 15. (Brown is sued in her official capacity, *id.* ¶ 4, so Erkins is pursuing the claim against the Clerk's Office, not Brown individually.)

Erkins thereafter began serving his two sentences at Stateville Correctional Center in Illinois. Am. Compl. ¶ 16. At Stateville, Lynda Wingerter, an IDOC employee, calculated Erkins's release date. *Id.* When calculating the release date for Erkins's three-year sentence in Case No. 13 CR 1798402, Wingerter did not account for any good-time credit.[4] *Id.* Erkins learned about Wingerter's alleged miscalculation just days before he was transferred to Robinson Correctional Center in July 2014. *Id.* ¶¶ 16, 18. After Erkins transferred to Robinson, Britni Huddleston, another IDOC employee, re-calculated Erkins's release date. *Id.* ¶ 18. But the re-calculation did not help: like Wingerter, Huddleston also did not account for the 337 days of good-time credit when calculating the release date for the three-year sentence in Case No. 13 CR 1798402. *Id.*

---

[4]Erkins alleges that either "Brown's office did not inform the IDOC that [Erkins] was entitled to days of credit," or that Wingerter "with deliberate indifference to [Erkins's] constitutional rights, refused to use [the good-time credit] information to calculate [Erkins's] 'projected-out date.'" Am. Compl. ¶ 17.

3

In September 2014, Erkins wrote Brown's office about the good-time credit issue. Am. Compl. ¶ 19. The letter said that the IDOC did not know that he was entitled to 337 days of good-time credit towards *both* of his sentences and asked that Brown's office notify the IDOC to correct the miscalculation. *Id*. Brown's office did not respond. *Id*. ¶ 20.

Two months later, Erkins once again tried to bring the credit problem to the attention of Brown's office. Am. Compl. ¶ 21. This time, Erkins filed a motion requesting an order requiring the IDOC to account for his good-time credit when calculating his release date in Case No. 13 CR 1798402. *Id*. On January 30, 2015, a Cook County Circuit Court judge ordered that Erkins was entitled to 337 days of good-time credit in Case No. 13 CR 1798402. *Id*. ¶ 22. Less than two weeks later, with that order in hand, on February 11, 2015, Erkins mailed another letter to Brown's office, alerting the Clerk's Office of the state-court order. *Id*. But again Brown's office failed to notify the IDOC about the good-time credit, in violation of Illinois state-law. *Id*. ¶ 23; *see also* 730 ILCS 5/5-4-1(e). Alternatively, Erkins alleges that, if the Clerk's Office did notify the IDOC, then various IDOC employees—Britni Huddleston, Beverly Hemrich, Kaycee Gosnell, and/or Jeanne Campanella—refused to re-calculate Erkins's release date despite receiving notice of the state-court order. Am. Compl. ¶ 24. According to Erkins, these IDOC employees denied ever receiving this information from Brown's office. *Id*. ¶ 25.

On February 11, 2015 (the same day that Erkins sent the letter to Brown's office), Erkins "mailed" a motion to Brown's office, asking that the Clerk's Office

4

notify the IDOC about the January 30, 2015 order. Am. Compl. ¶ 26. After that, Erkins kept plugging away, writing Brown's office two more times, on February 27, 2015 and then again on March 27, 2015, asking that the order be sent to the IDOC. *Id.* ¶¶ 27-30. Erkins alleges that still, either Brown's office failed to send the Circuit Court's order to the IDOC, or Brown's Office did send the order but the IDOC refused to use it to re-calculate the release date. *Id.*

At long last, on May 20, 2015, Erkins was released from prison. Am. Compl. ¶ 31. Erkins alleges that he was wrongfully incarcerated for about 143 days due to the Clerk's Office's negligence or the IDOC Defendants' deliberate indifference to Erkins's unlawful confinement. *Id.* ¶¶ 32-33. Based on these allegations, Erkins asserts three counts against the Defendants. In Count One, Erkins brings a Section 1983 claim, alleging that the IDOC Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment when they failed to account for the good-time credit in Case No. 13 CR 1798402. *Id.* ¶¶ 37-39. Count Two is an Illinois state-law negligence claim against Brown in her official capacity as Clerk of the Circuit Court. *Id.* ¶¶ 40-43. The gist of Count Two is that Brown repeatedly breached her duty under Illinois state law to tell the IDOC about the good-time credit. *Id.* ¶¶ 41-42. Last is Count Three, in which Erkins alleges that Cook County is liable for Brown's negligence under a respondeat superior theory. *Id.* ¶¶ 44-47.

The Defendants now move to dismiss all three counts. The IDOC Defendants move to dismiss the Eighth Amendment claim for failure to state a claim, and

5

Brown and the County move to dismiss the negligence claim for lack of subject-matter jurisdiction and for failure to state a claim.

## II. Standard of Review

### A. Rule 12(b)(6)

When evaluating a motion to dismiss for failure to state a claim, the pertinent pleading standard is Federal Rule of Civil Procedure 8(a)(2). Under that rule, a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to

the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### B. Rule 12(b)(1)

When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008). It is the plaintiff's burden, however, to establish that subject matter jurisdiction exists. *Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). When a defendant moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), and also moves to dismiss for failure to state a claim under Rule 12(b)(6), a federal court should generally consider the Rule 12(b)(1) defense first. *See Bell v. Hood*, 327 U.S. 678. 682 (1946) (observing that "the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy").

### III. Analysis

### A. Count One: Eighth Amendment Claim Against IDOC Defendants

Count One alleges that the IDOC Defendants wrongfully incarcerated Erkins in violation of the Eighth Amendment. Am. Compl. ¶¶ 33, 37-39. The Seventh Circuit has held that prison officials violate the Eighth Amendment if, with deliberate indifference, they hold a prisoner past the sentence's expiration. *See, e.g.*, *Burke v. Johnston*, 452 F.3d 665, 669 (7th Cir. 2006) ("[I]ncarceration after the time

specified in a sentence has expired violates the Eighth Amendment if it is the product of deliberate indifference … ."). The crux of Erkins's claim is that the IDOC Defendants repeatedly refused to properly account for the court-ordered good-time credit when calculating his release date despite having received notice of the credit from the Clerk's Office. Am. Compl. ¶¶ 17, 24, 28, 30. Erkins alleges that he spent about 143 days too many in prison as a result of the IDOC Defendants' repeated refusal to re-calculate his release date. *Id.* ¶ 33. In response, the IDOC Defendants argue that "quasi-judicial" immunity bars this claim because each IDOC Defendant "calculated [Erkins's] sentence based upon facially valid court orders." IDOC Defs.' Br. at 4, ¶ 11.

This defense argument is premised on judicial immunity, which protects judges from liability for their judicial conduct. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1015 (7th Cir. 2000). The Seventh Circuit has extended this doctrine to "[n]on-judicial officials whose official duties have an integral relationship with the judicial process … ." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986); *see also Kincaid v. Vail*, 969 F.2d 594, 600-01 (7th Cir. 1992). These officials are entitled to "quasi-judicial" immunity, that is, "absolute immunity for their quasi-judicial conduct." *Henry*, 808 F.2d at 1238. The general purpose of quasi-judicial immunity is "to prevent court personnel and other officials from becoming a lightning rod for harassing litigation aimed at the court." *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001) (quotations and citation omitted).

Quasi-judicial immunity typically applies to non-judicial officials "performing discretionary and not ministerial acts." *Henry*, 969 F.2d at 1238. The doctrine also applies, however, to "those performing ministerial acts under a judge's supervision and intimately related to judicial proceedings." *Id.* In either case, "courts regularly require nonjudicial actors ... to demonstrate that their acts were *directly and explicitly ordered by a judge.*" *Schneider v. Cnty. of Will*, 366 F. App'x 683, 686 (7th Cir. 2010) (emphasis added); *cf. Richman*, 270 F.3d at 437 ("[T]he justification for extending absolute immunity is most compelling when the lawsuit challenges conduct specifically directed by the judge ... ."); *Kincaid*, 969 F.2d at 601 ("[C]ourt officials ... who act at the behest of a judge or pursuant to a court order are entitled to absolute quasi-judicial immunity ... ." (quotation and citation omitted)).

Where "the challenged conduct is *the manner* in which the judge's order is carried out and not conduct specifically directed by a judge," however, courts will not apply quasi-judicial immunity. *Richman*, 270 F.3d at 437 (emphasis added); *see also Schneider*, 366 F. App'x at 685 ("We have, though, refused to extend quasi-judicial immunity to the *manner* a judge's order was executed." (emphasis in original)). For example, in *Schneider v. County of Will*, the Seventh Circuit refused to extend quasi-judicial immunity to a county sheriff and a prison warden who allegedly failed to timely release the defendant from jail. 366 F. App'x at 684.[5] The

---

[5]*Schneider* is an unpublished Seventh Circuit order issued after January 1, 2007. 366 F. App'x 683. Although these orders are not precedential, they may be cited for their persuasive value. *See* Fed. R. App. P. 32.1(a); 7th Cir. R. 32.1(b). *Schneider's* reasoning is persuasive and its factual setting is close to this case. Erkins cited *Schneider* in his response brief, R. 49, Pl.'s IDOC Resp. Br. at 8, but the IDOC Defendants did not address even the persuasive values of the decision.

9

defendants moved to dismiss the plaintiff's Eighth Amendment claim "on the ground that they were simply carrying out Judge Garrison's directive and thus are shielded from liability by absolute 'quasi-judicial immunity.'" *Id.* The Seventh Circuit disagreed, reasoning that "[a] claim that prison officials failed to give proper credit for time served is not an attack on the judge's sentence, but on the manner of executing that sentence." *Id.* at 685 ("[C]laims against jailers for confinement beyond the term of a sentence typically involve qualified, not absolute, immunity."); *cf. Burke v. Johnston*, 452 F.3d 665, 669-70 (7th Cir. 2006). Concluding that the defendants' quasi-judicial immunity defense was "too fact-intensive to be decided on a motion to dismiss," the Seventh Circuit vacated the district court's order "extending quasi-judicial immunity to law-enforcement personnel … ." *Schneider*, 366 F. App'x at 686.

Just so here. As it stands, Erkins's claim that the IDOC Defendants failed to properly account for his good-time credit in Case No. 13 CR 1798402 is not an attack on the state-court's sentence in that case; rather, it is an attack on the *way* in which the IDOC Defendants executed (or failed to execute) that sentence. Erkins alleges that the IDOC Defendants "refused to acknowledge sentencing information received from Dorothy Brown's Office and/or refused to recalculate [Erkins's] release date … ." Am. Compl. ¶ 33. (Remember that this "sentencing information" included a January 30, 2015 court order acknowledging that Erkins's good-time credit applied to *both* of his sentences, including his sentence in Case No. 13 CR 1798402. *Id.* ¶ 22.) These allegations describe the manner in which the IDOC

10

Defendants carried out and ultimately exceeded court orders; they do not reflect "acts [that] were directly and explicitly ordered by a judge." *Schneider*, 366 F. App'x at 686; *see also Richman*, 270 F.3d at 437 ("[T]he claim is not that the judge ordered the deputies to use unreasonable force, but that the deputies exceeded the judge's order by the manner in which they executed it.").

So, as in *Schneider*, the IDOC Defendants' quasi-judicial immunity defense is simply too fact-intensive to decide at the dismissal-motion stage. The IDOC Defendants repeatedly argue that they "had no choice but to follow [the circuit court's sentencing order] in their calculation of [Erkins's] sentence." IDOC Defs.' Br. at 3, ¶ 8. But this argument again ignores the allegations that the IDOC Defendants actually *disregarded* the January 30, 2015 court order, as well as other sentencing information they received from Brown's office. *Schneider* reasoned that "extending quasi-judicial immunity to law-enforcement personnel [requires] competent evidence that they were acting at the direction of a judge." *Id.* The same reasoning applies here and quasi-judicial immunity does not apply right now. The IDOC Defendants' motion to dismiss must be denied.

### B. Counts Two and Three: State-Law Claims Against Brown and Cook County

In Counts Two and Three, Erkins brings a negligence claim against Brown in her official capacity and a corresponding respondeat superior claim against Cook County. Am. Compl. ¶¶ 40-47. Erkins alleges that Brown's office repeatedly breached a "ministerial duty" when it "failed to inform the IDOC that [Erkins] was entitled to any days of credit towards [one of his] three (3) year sentence[s] entered

11

in [Case No.] 13 CR 1798402." *Id.* ¶¶ 15, 23, 27, 29. As noted earlier, Illinois state law requires circuit court Clerks to "transmit to the department, agency or institution, if any, to which the defendant is committed … the number of days, if any, which the defendant has been in custody and for which he is entitled to credit against the sentence … ." 730 ILCS 5/5-4-1(e). In response, Brown raises a host of defenses and doctrines—including the Eleventh Amendment, quasi-judicial immunity, and the Illinois Tort Immunity Act, to name a few—that she argues warrant dismissing these state-law claims. *See* Brown Br. at 4-10.

In deciding Brown's motion to dismiss, the analysis begins (and ends) with the Eleventh Amendment. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[6] U.S. CONST. amend. XI. This means that the Eleventh Amendment bars federal courts from exercising jurisdiction over suits brought by a citizen against a state, state agency, or state official (in his or her official capacity) for monetary damages. *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992); *Bartoli v. Attorney Registration & Disciplinary Comm'n*, 1998 WL 100246, at *2 (N.D. Ill. Feb. 24, 1998) ("The Eleventh Amendment bars suits against any defendant that is an arm or alter ego of the state." (internal quotations omitted)), *aff'd sub nom.* 202 F.3d 272 (7th Cir. 1999).

---

[6]"Although this language expressly encompasses only suits brought against a state by citizens of another state, the Eleventh Amendment has long been interpreted to also bar federal courts from exercising jurisdiction over actions against a state brought by her own citizens." *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992).

12

"Whether a particular official is the legal equivalent of the State itself is a question of that State's law … ." *Garcia v. City of Chicago, Illinois*, 24 F.3d 966, 969 (7th Cir. 1994). Under Illinois law, circuit court Clerks—like Brown—are actually state employees, even though their offices cover counties. *See* ILL. CONST. Art. 6, § 18(b) ("The General Assembly shall provide by law for the election, or for the appointment by Circuit Judges, of clerks and other non-judicial officers of the Circuit Courts and for their terms of office and removal for cause."); *Kincaid v. Brown*, 2007 WL 4247183, at *5 (N.D. Ill. Nov. 30, 2007) (observing that "the clerk of a circuit court is defined under Illinois law as being a state employee"); *Drury v. McLean Cnty.*, 433 N.E.2d 666, 669 (1982) (determining that "the clerk of the circuit court must be a member of State government, not subject to the control of any local government" based on a review of Illinois legislative history). Importantly, "that counties pay the salaries and expenses of circuit court clerks" does not change the fact that circuit Clerks are state, and not county, employees. *Drury*, 433 N.E.2d at 669.

Given this, courts in this district have repeatedly held that the Eleventh Amendment bars damages claims brought against circuit court Clerks in their official capacities. *See, e.g., Fayemi*, 155 F. Supp. 2d at 948 (holding that "[t]he Clerk of Court is a state employee and, consequently, is a state agent for purposes of Eleventh Amendment immunity"); *Farrar v. Glantz*, 2000 WL 574682, at *3 (N.D. Ill. May 9, 2000) (holding that "[b]ecause the Clerk of the Court is a member of the state government and not the local government, Eleventh Amendment immunity is

13

triggered"); *Curry v. Pucinski*, 864 F. Supp. 839, 843 (N.D. Ill. 1994) (observing that the district court previously dismissed an official-capacity claim against a circuit clerk because "county clerks a[re] members of State government rather than of any local government"); *cf. Reuhman v. Vill. of Palos Park*, 1992 WL 281352, at *2 (N.D. Ill. Oct. 7, 1992) (observing that "the Clerk of the Court is a state employee," and reasoning that "[h]ow the entity is defined by state law is an important consideration in determining whether an entity is a state or local body for Eleventh Amendment purposes"). Though these decisions are not binding precedent, the Court nevertheless finds their reasoning persuasive, in light of the Illinois Constitution's treatment of court Clerks. So Erkins's negligence claim against Brown in her capacity as a circuit court Clerk is a suit against the State for purposes of the Eleventh Amendment.

Erkins contends his negligence claim against Brown is not truly against the State because "Cook County is the entity that would be financially responsible for any finding of liability." R. 41, Pl.'s Brown Resp. Br. at 10. Erkins does not cite any state law or Cook County ordinance for this proposition,[7] but Brown's response does not try to dispute it. *See* R. 50, Brown Reply at 4. And there is an Illinois law that says, "[t]he county board shall provide the compensation of clerks of the Circuit Court, and the amount necessary for clerk hire, stationery, fuel *and other expenses*."

---

[7]Erkins does cite case law, but the decisions were issued by the Illinois Court of Claims, which Illinois state courts hold have no binding precedential value. *See, e.g.*, *Lohan v. Walgreens Co.*, 488 N.E.2d 679, 681 (1986).

705 ILCS 105/27.3 (emphasis added).[8] This provision might require the County to pay for a damages judgment against Brown.

But the County's financial responsibility for a judgment does *not* change the legal character of Brown's office—which is the Clerk's Office for a *state* court—for purposes of the Eleventh Amendment. To be sure, "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Miller-Davis Co. v. Illinois State Toll Highway Auth.*, 567 F.2d 323, 327 (7th Cir. 1977) (observing that whether the State will have to pay any damages is an important factor when analyzing whether to treat a state agency as an arm of the State). But the source of funding is not dispositive. *See Seminole Tribe v. Florida*, 517 U.S. 44, 58 (1996) (stating that sovereign immunity "does not exist solely in order to prevent federal-court judgments that must be paid out of a State's treasury; it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties" (citations, quotations and brackets omitted)); *see also Mercado v. Dart*, 604 F.3d 360, 366 (7th Cir. 2010) (observing that a county official's "[s]tatus … as 'the state' depends on the organization chart and *not* on whose law supplies the substantive rule *or who pays the judgments*" (emphasis added)); *Scott*, 975 F.2d at 372 ("A state can be the 'real, substantial party in interest' even if its treasury will remain untouched … .").

---

[8]It is worth noting that Section 27.3 is titled, "Compensation." 705 ILCS 105/27.3. Again, it is unclear whether monetary-damages judgments would fall within the purview of "other expenses" in the context of circuit clerk "compensation."

15

What's more, it is the Illinois state legislature that has decided on a fiscal arrangement whereby the county is responsible for circuit court Clerk expenses. *See* 705 ILCS 105/27.3. It is not as if the County assumed responsibility for these expenses on its own initiative. Put another way, although the county might ultimately foot the bill for circuit court Clerk salaries and expenses, it is the state judiciary that has the "inherent power to compel payment of funds necessary for the efficient and effective operation of the judicial branch." *Warren v. Stone*, 958 F.2d 1419, 1422 (7th Cir. 1992); *see also Ruehman*, 1992 WL 281352, at *2 n.1 (quoting *Warren*, 958 F.2d at 1422). That circuit court Clerk costs are in reality "subject to the ultimate control of the judiciary" reaffirms that Brown is a state, and not a county, employee. *Warren*, 958 F.2d at 1422; *cf. Bartoli*, 1998 WL 100246, at *2 (holding that the Attorney Registration and Disciplinary Commission of Illinois and its employees were state agents because the Illinois Supreme Court "defines the ARDC's role and exercises significant control over its activities"); *Scott*, 975 F.2d at 369-73 (holding that sheriff and deputy acted "as an arm of the Illinois state judicial system," and thus as state officials, when they forcibly evicted plaintiffs "even if a judgment for [the plaintiffs] would be paid by the county"). The County's financial responsibility does not alter the Eleventh-Amendment bar against Erkins's state-law claims.[9]

---

[9]Erkins also argues that "[e]ven if Brown were the equivalent of an employee of the State of Illinois[,] the Seventh Circuit's most recent decisions regarding supplemental jurisdiction over state employees held that federal courts can exercise supplemental jurisdiction." Pl.'s Brown Resp. Br. at 10-11 (citing *Rodriguez v. Cook Cnty., Illinois*, 664 F.3d 627 (7th Cir. 2011); *Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012); *Wright v. Carter*, 2015 WL 4978688, at *1 (N.D. Ill. Aug. 20, 2015); and *Woods v. Cook Cnty., Illinois*, 2014

Because the Eleventh Amendment bars this Court from exercising jurisdiction over the negligence claim (and thus the County is dismissed too, because there is no respondeat superior liability in this case without the Clerk's Office in the case), the Court need not address Brown's other defenses (like quasi-judicial immunity and immunity under the Illinois Tort Immunity Act). Counts Two and Three are dismissed without prejudice to refiling in state court.

## IV. Conclusion

For the reasons discussed, the IDOC Defendants' motion to dismiss, R. 42, is denied, and Brown and the County's motion to dismiss, R. 32, is granted. Brown and Cook County are terminated as named Defendants, but the Court encourages the Assistant State's Attorney assigned to the case to facilitate acceptance of, and responses to, subpoenas that Erkins will no doubt want to serve on the Clerk's Office and on County employees. The IDOC Defendants' answer to the First

---

WL 340422, at *1 (N.D. Ill. Jan. 30, 2014)). There are two problems with Erkins's argument: first, it ignores the fact that the Eleventh Amendment bar applies to supplemental state law claims. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("[P]endent jurisdiction does not permit … an evasion of the immunity guaranteed by the Eleventh Amendment."). Second, the cases that Erkins cites to are all suits brought against state employees in their *individual*, as opposed to *official*, capacities. Courts can certainly exercise supplemental jurisdiction over state-law claims where state officials have been sued in their individual capacities, because those types of claims do not implicate the Eleventh Amendment.

17

Amended Complaint is due by June 21, 2016. Rule 26(a)(1) disclosures are due by June 28, 2016. The status hearing of June 30, 2016, remains in place to set the remainder of the discovery schedule.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 7, 2016